OPINION
Plaintiff-appellant, Barbara A. Wiethe, appeals a decision of the Warren County Court of Common Pleas, Probate Division. We affirm the trial court's decision.
This case arises out of attempts to settle the estate of appellant's deceased husband, Charles Edward Beaty ("Beaty"). Appellant and Beaty married on May 29, 1990. Prior to the marriage, Beaty and appellant entered into a prenuptial agreement in which appellant waived her rights to Beaty's estate on his death unless the marriage lasted longer than ten years. Beaty died in September 1995, slightly more than five years into the marriage.
Appellant filed a complaint to set aside the prenuptial agreement in January 1996. The trial court found the prenuptial agreement was enforceable and granted summary judgment to the estate, dismissing appellant's complaint. In its decision, the trial court noted that one piece of property was outside the terms of the prenuptial agreement and that appellant was entitled to a surviving spouse's share of this property. Appellant appealed the trial court's decision to this court. We affirmed the trial court's decision. Wiethe v. Beaty (Feb. 16, 1999), Warren App. No. CA98-04-049, unreported, appeal not allowed In reWiethe (1999), 85 Ohio St.3d 1499.
The trial court again endeavored to settle Beaty's estate. Appellant filed several motions regarding the estate. After a hearing, the trial court issued a decision resolving various motions. The trial court overruled several of appellant's motions, including a motion to remove the executor and executrix, and objections to the inventory. The trial court also, contrary to appellant's contentions, found that certain property was not outside the prenuptial agreement.
Appellant appeals the trial court's decision and raises five assignments of error. Since they are related and relevant to the other assignments of error, we first address appellant's fourth and fifth assignments of error. These assignments of error state:
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FOUND THAT BARBARA R. WIETHE, SURVIVING SPOUSE, WAS NOT ENTITLED TO CITY CENTER: FB PROPERTY.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FOUND THAT BARBARA R. WIETHE HAS NO INTEREST IN BC DEMOLITION AND RUTHIE B, INC.
Appellant argues that she is entitled to the FB property ("FB") because, although it was listed on the prenuptial agreement, Beaty did not actually purchase the property until after the marriage. Appellant's contentions regarding BC Demolition ("BC") and Ruthie B, Inc. ("Ruthie B") arise from a paragraph of the trial court's decision on the estate's motion for summary judgment. A discussion of the history of the claims regarding the prenuptial agreement is necessary to our resolution of these assignments of error.
As mentioned above, appellant filed a motion to set aside the prenuptial agreement so that she could share in the estate as a surviving spouse. Count I of the complaint requested that the trial court set aside the prenuptial agreement and restore appellant to her rights as a surviving spouse in the estate. Count II of appellant's amended complaint stated:
 By virtue of the Plaintiff's election to take under R.C. 2105.06 and against the Will of Charles Edward Beaty, Plaintiff became entitled to one-third of his net estate which was acquired "not solely in Ed's name" as described in Paragraphs 8 and 9 of this complaint.
Appellant requested a declaratory judgment pursuant to R.C. 2721.05(C) finding her a beneficiary of the estate in the property that was not solely in Beaty's name.
The estate filed a motion for summary judgment. In the motion for summary judgment, the estate argued that the prenuptial agreement was valid and should not be set aside. The estate also addressed Count II of appellant's complaint and specifically requested summary judgment as to this claim. The estate argued that appellant was not entitled to any property as a result of paragraph four of the prenuptial agreement because none of the property owned by Beaty at the time of his death was held solely in his name.
The trial court granted the estate's motion for summary judgment. Specifically, the trial court found that the prenuptial agreement was enforceable and noted that appellant, a licensed attorney, was aware of the assets she was waiving when she signed the prenuptial agreement and that the amount she received on Beaty's death was not disproportionate.
The only property in the estate that the trial court found outside the prenuptial agreement was a parking lot Beaty purchased with another person. The trial court noted this exception by stating:
 Paragraph four in the Prenuptial Agreement states that property that was not solely in Beaty's name acquired after the marriage is not considered as part of the prenuptial agreement. Beaty purchased a parking lot with another party which had a value of $62,500.00. This court finds that the language of the Prenuptial Agreement is clear and that this property is not a part of the agreement.
On appeal, appellant did not argue the issue of property not subject to the prenuptial agreement, and we affirmed the trial court's decision.Wiethe v. Beaty (Feb. 16, 1999), Warren App. No. CA98-04-049, unreported. The Ohio Supreme Court denied review. In re Wiethe (1999),85 Ohio St.3d 1499.
Appellant then argued that the trial court should find that two other pieces of property were outside the prenuptial agreement because they were not held "solely in Beaty's name." Appellant also argued that the FB property was outside the prenuptial agreement because, although it was listed on the prenuptial agreement, it was not transferred to Beaty until after the marriage. The trial court addressed the merits of these arguments and found that appellant was not entitled to a surviving spouse's share of any of these properties.[1]
We find it unnecessary to address the merits of appellant's claims regarding these three pieces of property. Instead, we find that the issue of the validity of the prenuptial agreement and what property is outside of that agreement is res judicata since the issue was previously raised and litigated.
Under the doctrine of res judicata, "[a] final, binding judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, paragraph one of the syllabus. "The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Nat'l. Amusements, Inc. v.Springdale (1990), 53 Ohio St.3d 60, 62. An existing final judgment or decree between the parties is conclusive as to all claims which were or might have been litigated in a prior action. Id. Pursuant to the doctrine of issue preclusion, issues actually decided in a declaratory action are _res judicata, and preclude the parties from relitigating those matters. Jamestown Village Condominium Owners Assn. v. MarketMedia Research, Inc. (1994), 96 Ohio App.3d 678, 685-86; Ketchel v.Bainbridge Twp. (1992), 79 Ohio App.3d 174, 177.
The doctrine of res judicata "is based on the principles that parties ought not to be permitted to litigate the same issues more than once, that litigation must not be interminable, that the judgment ought to be the end of the litigation, that circuity of actions should yield to the repose of litigation, and that a multiplicity of actions is not favored.Harris v. Kyle (Dec. 12, 1988), Holmes App. No. 388, unreported, quoting 63 Ohio Jurisprudence 3d (1985), Judgments, Section 401. "Without this fundamental doctrine, the proper enforcement of law would be quite impossible, as it would unsettle all the determinations of law and open an endless avenue to contention and vexation." Id.
Appellant argued and litigated the issue of the validity of the prenuptial agreement and whether the assets were properly disclosed. She is precluded from relitigating the issue of whether the FB property, which was disclosed in the prenuptial agreement, is outside of the agreement. In addition, the issue of whether appellant is a beneficiary to any of the property in the estate has also been litigated. Appellant claimed to be entitled to all property not solely in Beaty's name. The estate argued it was entitled to summary judgment because none of the property in the estate met this description. The trial court found this exception applied to one piece of property, the parking lot. We affirmed this decision. Accordingly, appellant is now precluded from arguing that other pieces of property fit this description.
We note that the issue of settling Beaty's estate has been protracted over a period of more than five years since his death in large part due to litigation initiated by appellant. To allow appellant to continue to argue the issue of whether or not she is entitled to certain property in the estate only serves to open an endless avenue to contention and vexation in a case that has already seen more than its share. Because these issues have been previously litigated, appellant's fourth and fifth assignments of error are overruled.
Assignment of Error No. 1:
 THE TRIAL COURT DID NOT GIVE NOTICE OF A HEARING, NOR HOLD AN EVIDENTIARY HEARING ON THE SURVIVING SPOUSE'S MOTION FOR REMOVAL OF THE EXECUTOR AND EXECUTRIX AND THEN, BY ENTRY, DENIED SAID MOTION. THIS WAS ERRONEOUS AS A MATTER OF LAW.
In her first assignment of error, appellant contends that the trial court erred in ruling on her motion to remove fiduciaries without holding a hearing. In his will, Beaty named his two adult children, Jeffrey Beaty and LaDonna Leach, the executor and executrix of his estate. Appellant filed a motion to remove the two fiduciaries on January 2, 1998. Appellant argued that the removal was necessary to safeguard the assets of the estate. She requested the court set a date for an evidentiary hearing on the matter. This thirty-eight page motion with exhibits "A" through "NN" was supplemented by a seven page supplemental memorandum including exhibits "A" through "G" on February 4, 1999. On February 4, 1999, appellant also filed a motion to appoint a disinterested person to administer the estate. On August 11, 1999, after our first decision in this matter on appeal, appellant filed a thirty-three page supplemental memorandum with exhibits "A" through "UU" attached, in support of the motion. She argued that there is an adversarial nature and great animosity between her and Beaty's children necessitating their removal.
At a hearing on December 10, 1999, the trial court noted that there were several motions pending before the court, including the motion to remove the fiduciary. Appellant stated that the latest motion was a refiling of the motion filed two years prior, and that the estate did not have an opportunity to respond to the latest motion. The trial court then proceeded to address some of the other pending motions before the court. In its August 23, 1999 decision and entry, the court overruled the motion to remove the fiduciary. Appellant argues that the court should have held an evidentiary hearing before ruling on the motion.
Appellant's motion for removal was filed pursuant to R.C. 2109.24, which states in relevant part:
 The court may remove any such fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law.
 The decision to remove a fiduciary pursuant to R.C. 2109.24 rests in the sound discretion of the trial court and a reviewing court will not reverse that decision absent an abuse of discretion. In re Estate of Russolillo_(1990), 69 Ohio App.3d 448, 450. The term "abuse of discretion" implies that the court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellant argues that an evidentiary hearing is required before the court may rule on a motion to remove a fiduciary. The estate argues that neither the Civil Rules, Local Rules, nor the Ohio Revised Code require a hearing.
The removal statute, R.C. 2109.24, requires that a fiduciary be given ten days' notice before removal is allowed. Courts have held that the requirement of ten days' notice implies that the fiduciary is entitled to a hearing and that it is error for a court to deny a fiduciary the opportunity to present evidence and witnesses in defense of a motion for removal. In re Estate of Paull (1950), 90 Ohio App. 403, 408. The purpose of the hearing is to give the fiduciary a chance to respond to the motion and present evidence in his defense. See id.; In re Estate ofRussolillo, 69 Ohio App.3d at 457.
In this case, it is not the fiduciary who requested a hearing, but the person seeking to remove the fiduciary. While a fiduciary has a right to defend his removal, we find that the trial court is not required to hold a hearing if it determines removal of the fiduciary is not warranted by the motion. The trial court had a large amount of documentary evidence which was more than sufficient to determine whether a hearing on the motion was necessary. We find that under the facts of this case, the trial court did not abuse its discretion in denying the motion to remove the executor and executrix without a hearing. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT FAILED TO FOLLOW THE OHIO REVISED CODE SECTION 2109.30, THE FIDUCIARIES HAVE NEVER GIVEN AN ACCOUNTING OF THE ASSETS OF THE ESTATE IN OVER FIVE YEARS, AND THE TRIAL COURT APPROVED THE INVENTORY.
Appellant argues that it was error for the trial court to approve the inventory without requiring the estate to file an accounting. This assignment of error is misplaced for several reasons. First, we note that the general practice of the probate court is to obtain an inventory prior to an accounting in order to determine what property belongs in the estate. There is no requirement that an accounting must be done prior to the inventory. In addition, the record shows that several extensions of time to file the inventory were granted by the trial court.
Finally, appellant does not indicate what order of the court she is appealing. Although appellant requested an accounting several times, there is nothing in the record to show that appellant objected to the inventory on the basis that an accounting had not been performed. Questions neither raised nor passed upon by the trial court will not be ruled upon by this court. In re Adoption of McDermitt (1980),63 Ohio St.2d 301, 307. We note that appellant also argues that no accounting has been performed on the parking lot. However, in the order from which appellant appeals, the trial court ordered that an accounting be performed on the parking lot.[2] The court has already ordered an accounting on the property in which appellant has an interest. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT FAILED TO FOLLOW OHIO REVISED CODE SECTION 1779.02 AND 1779.03 REGARDING PARTNERSHIP PROPERTY. THERE HAS NEVER BEEN AN ACCOUNTING OF THE PARKING LOT, FB PROPERTIES, BC DEMOLITION AND RUTHIE B, INC.
Appellant contends that the trial court failed to follow Ohio law because the estate's partnership property has not been appraised. When a member of a partnership dies, R.C. 1779.01 requires the surviving partners to apply to the probate court of the county in which the partnership existed for the appointment of three disinterested appraisers, "who shall make a complete inventory and appraisement of the entire assets of the partnership, together with a schedule of debts and liabilities of the partnership, and deliver it to the surviving partners, who forthwith shall file it in the probate court * * *."
However, appellant's argument fails because the properties she argues were not appraised are not partnerships. There is no evidence that the parking lot property is owned by Beaty under a partnership agreement. Instead, the evidence indicates that the parking lot is a piece of property that was jointly owned by Beaty and another person. Likewise, FB is listed on the inventory as an "undivided one-half interest in Lots 3 and 4, City Center Park." There is no evidence that this property was subject to a partnership agreement.
Ruthie B and BC are both corporations. Although appellant argues under her fifth assignment of error that the corporate entities should be disregarded under the alter ego doctrine because corporate formalities were not followed, we find this argument without merit.
Ohio recognizes an exception to the general rule that "normally, shareholders, officers, and directors are not liable for the debts of a corporation." Belvedere Condominium Unit Owner's Assn. v. R.E. RoarkCos. Co. (1993), 67 Ohio St.3d 274, 287. "Under this exception, the `veil' of the corporation can be `pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." Id. at 287. Courts will permit this "piercing of the corporate veil" only if the shareholder is indistinguishable from or the "alter ego" of the corporation itself. Id.
The party seeking to impose individual liability on the shareholder retains the burden of proving the existence of facts justifying a piercing of the corporate veil. Univ. Circle Research Ctr. Corp. v.Galbreath Co. (1995), 106 Ohio App.3d 835, 840. As evidence that the properties are not corporations, appellant argues that the estate has not been able to produce corporate minute books, meeting minutes, or stock certificates. This evidence does not meet appellant's burden.
In addition, appellant's argument that the corporate entity should be disregarded is misplaced. The doctrine applies only to situations in which an injured party seeks to hold individual shareholders of a corporation liable for an injury or unjust loss. We cannot extend the doctrine to allow an individual to disregard a corporate entity in order to share in the estate of a deceased shareholder.
Because none of these properties were partnerships, the trial court did not err by failing to follow the appraisement procedure in R.C 1779.01. Appellant's third assignment of error is overruled.
 _______________________ VALEN, J.
POWELL, P.J., and WALSH, J., concur.
[1] We note that the trial court incorrectly stated that the BC and Ruthie B were properties disclosed in the prenuptial agreement, when in fact, these properties were purchased after the marriage and were not listed on the prenuptial agreement. However, the error is not prejudicial as the trial court also found that the properties were corporate properties in which appellant has no interest.
[2] In fact, this assignment of error is circuitous since the order appellant appeals from grants the relief she appears to be ultimately requesting.