UNIVERSITY CIRCLE RESEARCH CENTER CORPORATION, Appellant,

v.

GALBREATH COMPANY et al., Appellees.*

[Cite as *Univ. Circle Research Ctr. Corp. v. Galbreath Co.* (1995), 106 Ohio App.3d 835.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68038.

Decided Oct. 16, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 75 Ohio St.3d 1451, 663 N.E.2d 332.

836

*James D. Vail* and *Jonathan L. Stark,* for appellant.

*Robert M. Kincaid, Jr., E. Spencer Stewart* and *Lisa Hammond Johnson,* for appellees.

AUGUST PRYATEL, Judge.

Appellant, University Circle Research Center Corporation ("UCRCC"), initiated this action by alleging claims for breach of contract, concealment, bad faith, breach of implied covenant of good faith and fair dealing, and piercing the corporate veil against appellees Research Corporation, The Galbreath Company and Daniel M. Galbreath, individually.

I

The factual background of this case revolves around Research Corporation's business as the builder and manager of a building subleased by appellant UCRCC. The record reveals that in the mid–1960s, Case Institute of Technology ("Case"), and other University Circle institutions incorporated appellant UCRCC to develop a research park. Thereafter, UCRCC engaged The Galbreath Company (f.k.a. John W. Galbreath & Company) to construct a building and parking garage at 11000 Cedar Avenue (hereinafter "Building 1"). In order to entice The Galbreath Company to enter into an agreement, Case guaranteed that eighty percent of the space in Building 1 would be leased by Case for twenty-five years.

In response, The Galbreath Company formed Research Corporation for the purpose of the development and management of Building 1.

On August 30, 1966, UCRCC subleased the property to Research Corporation for a twenty-five-year term. Under the terms of the sublease, Research Corporation was solely responsible for constructing the building to specifications, maintaining the building and paying the mortgage and taxes.

On July 1, 1968, after Building 1 was fully constructed, Research Corporation entered into a management agreement with The Galbreath Company. Under this agreement, The Galbreath Company assumed responsibility for the management and maintenance of Building 1. This relationship between Research Corporation, UCRCC and The Galbreath Company continued without incident until approximately 1987. In 1987, Research Corporation ordered a structural survey of Building 1. The results of this survey indicated that there were several deficiencies with the original construction and on-going maintenance of Building 1.

On December 11, 1992, UCRCC filed its complaint against Research Corporation and The Galbreath Company. Thereafter, on May 10, 1993, upon leave of court, UCRCC amended its original complaint to add defendant Daniel M. Galbreath as a party to whom liability would attach if Research Corporation's corporate entity were disregarded.[1]

On September 27, 1993, defendants-appellees Daniel M. Galbreath and The Galbreath Company filed a motion for partial summary judgment seeking to eliminate UCRCC's claim for piercing the corporate veil. In a decision and order dated February 2, 1994, the trial court granted partial summary judgment in favor of defendants-appellees, finding that, as a matter of law, the protection of the corporate veil as it pertains to appellees may not be disregarded.

On September 15, 1994, UCRCC, with leave of court, filed its second amended complaint dismissing all other claims with the exception of the claim relating to piercing the corporate veil alleged against The Galbreath Company and Daniel M. Galbreath. Thereafter, on September 20, 1994, the trial court entered a final appealable order granting appellees' motion for summary judgment on the claim for piercing the corporate veil.

UCRCC has timely appealed the order of the trial court and brings the following assignment of error for our review:

---

1. John W. Galbreath and Daniel M. Galbreath were the only shareholders of Research Corporation. In 1988, John W. Galbreath died; however, his estate has not been joined as a party to this action.

"The trial court erred in granting appellee's [*sic* ] motion for summary judgment on appellant's alter ego/'piercing the corporate veil' claim because appellant presented sufficient evidence to create a genuine issue of material fact as to that issue and appellees were not entitled to judgment as a matter of law."

## II

Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with the utmost caution, resolving doubts and construing evidence against the moving party and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825, 831; *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 1–2, 433 N.E.2d 615, 616. To be successful, a motion for summary judgment must demonstrate that (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. *Id.* at 3, 24 O.O.3d at 2, 433 N.E.2d at 616–617. In order to prevail upon a motion for summary judgment, the moving party must demonstrate (1) the absence of material facts, and (2) that it is entitled to judgment as a matter of law. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. In reviewing a granting of summary judgment, an appellate court conducts the same analysis as the lower court. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902. Therefore, this court will review the record *de novo* and decide whether, as a matter of law, summary judgment is appropriate on the claim for piercing the corporate veil.

## A

In *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075, the Ohio Supreme Court set forth the test to be used in determining whether to pierce the corporate veil. Following the holding in *Bucyrus–Erie Co. v. Gen. Prod.* (C.A.6, 1981), 643 F.2d 413, the court held that "[t]he corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere*, at paragraph three of the syllabus.

One of the purposes of incorporation is to limit the liability of individual shareholders. Section 3, Article XIII of the Ohio Constitution. Therefore, in applying the *Belvedere* test, the burden of proof is upon the party seeking to impose individual liability on the shareholder to demonstrate that the grounds for piercing the corporate veil exist. See *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 423, 602 N.E.2d 685, 689–690.

In order to survive imposition of summary judgment on the piercing the corporate veil claim, appellant must show that Galbreath and Research Corporation are fundamentally indistinguishable. *Belvedere*, 67 Ohio St.3d at 288, 617 N.E.2d at 1085–1086. However, in almost all cases of a closely held or solely owned corporation, the first prong of the *Belvedere* test is generally at issue.

In the present case, appellant contends that The Galbreath Company and Daniel M. Galbreath, individually, dominated and controlled Research Corporation in such a manner that Research Corporation had no separate mind, will or existence of its own. In support of this argument, appellant points to the fact that Daniel M. Galbreath was the sole shareholder as well as an officer and director of Research Corporation. While the mere fact that Mr. Galbreath occupied all of these positions does not, *per se*, signify that he or The Galbreath Company exercised control and domination over Research Corporation, this fact, coupled with the management agreement between The Galbreath Company and Research Corporation as well as the corporate records, formalities and actions of the parties presented within the record by way of sworn affidavits and deposition testimony, clearly shows that summary judgment based upon the first prong of the *Belvedere* test is improper in this matter. The facts presented in the record clearly show that reasonable minds could come to different conclusions as to the ultimate control and domination of Research Corporation.

Having decided that reasonable minds could find that the first prong of *Belvedere* could be met, we now turn to consider whether summary judgment in favor of appellees is proper with regard to the two remaining prongs of the *Belvedere* test.

B

In the present case, appellant has the burden of producing evidence on any issue for which it bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095; *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Therefore, it is incumbent upon appellant to produce evidence that would cause reasonable minds to differ as to a material fact of the case. Civ.R. 56; *Norris, supra*. Therefore, in order to avoid summary judgment on the second prong of *Belvedere*, there

must be a demonstration that the domination and control of the corporation was used to commit a fraud or illegal act. See *Am. Hardware Supply v. Alan Supply, Inc.* (1989), 63 Ohio App.3d 838, 843, 580 N.E.2d 473, 476.

Appellant's contention that appellees' control of Research Corporation was exercised to "commit a fraud or illegal act" rests upon the purported inadequacy of the construction and maintenance of Building 1. Of utmost importance to our determination of this issue is the structural report and survey of Building 1 done in 1987 by the firm of Barber & Hoffman at the behest of Research Corporation. Appellant asserts that this report put Research Corporation on notice as early as 1987 that the construction of Building 1 was improper in some respects. In addition, appellant contends that Research Corporation breached its affirmative duty to repair the defects by failing to correct the defects or inform UCRCC of the presence of the Barber & Hoffman report.

Pursuant to the express terms of the lease, we find an affirmative duty upon appellees to repair any known defects to, and properly maintain, Building 1. Appellant contends that appellees' failure in this regard constitutes the necessary "fraud or illegal act" required by the second prong of the *Belvedere* test.

In Ohio, the elements of fraud include:

"(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712.

A review of the record reveals that appellant has presented evidence that defects were discovered and made known to the appellees as early as 1987. Further, the record does show that appellees neither corrected the defects nor informed appellant of their existence. Appellees contend that appellant knew of the report in 1987; however, appellant disagrees and contends that it only became aware of the defects when it inadvertently discovered the presence of the report in 1992. Whether the appellees' concealment of the report and repairs did, in fact, occur in 1987 or 1992 is a question of fact which renders summary judgment improper and becomes an issue of determination best reserved for the trier of fact. If the trier of fact determines that appellees did, in fact, conceal this knowledge, then fraud could be determined to be present and/or reasonable minds could conclude that the failure of appellees to repair the defects resulted in

sufficient injury and loss to appellant that would satisfy the third prong of the *Belvedere* test.

C

Upon consideration of the entire record, we find that appellant has presented ample evidence from which reasonable minds could conclude that either Daniel M. Galbreath, individually, or through his company, The Galbreath Company, maintained control over Research Corporation in such a manner as to allow the corporate veil to be pierced. In order to properly pierce the corporate veil, a plaintiff must prove the three essential requirements of the *Belvedere* test, *supra*.

Appellant has presented ample evidence upon which reasonable minds could differ whether the control of Research Corporation has caused an inequity or injustice necessary to invoke the imposition of liability upon Daniel M. Galbreath, individually, or The Galbreath Company. Specifically, we find that there exist genuine issues of material fact to be decided regarding whether Building 1 was originally built in the proper manner and whether Building 1 was properly and adequately maintained by Research Corporation. Moreover, we find that there exist questions of material fact to be decided upon the issue of fraud and concealment with regard to the Barber & Hoffman report of 1987.

Accordingly, we hold that the trial court's granting of summary judgment in favor of appellees was improper on the claim for piercing the corporate veil as there existed genuine issues of material fact on the three prongs of the test set forth in *Belvedere, supra*.

The judgment of the trial court is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

HARPER, P.J., and MATIA, J., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.