NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1081n.06

No. 10-3735

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 16, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RALPH GATES, III | . | ) |
| | | ) |
| Plaintiff - Appellant | | ) ON APPEAL FROM THE UNITED |
| | | ) STATES DISTRICT COURT FOR THE |
| v. | | ) NORTHERN DISTRICT OF OHIO |
| | | ) |
| UNITED STATES POSTAL SERVICE | | ) |
| | | ) |
| Defendant - Appellee. | | ) |

**Before: CLAY and WHITE, Circuit Judges; and HOOD, District Judge.**[*]

HOOD, District Judge. Plaintiff-Appellant Ralph Gates, III, appeals from the judgment entered in favor of the Defendant-Appellee the United States Postal Service by the district court on Gates' interference and retaliation claims under the Family and Medical Leave Act ("FMLA"). Gates argues that the district court erred when, with the assistance of an advisory jury pursuant to Fed. R. Civ. P. 39(c)(1), it found that Gates' employment would have been terminated regardless of the exercise of his rights under the FMLA because he had an excessive number of unscheduled absences unrelated to his FMLA leave. For the reasons that follow, we affirm the district court's judgment.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

Appellant Gates brought this action against Appellee USPS, alleging that USPS terminated him in violation of the FMLA (Count 1); terminated him in retaliation for exercising his rights under the FMLA (Count 2); terminated him in violation of public policy under Ohio law (Count 3); and violated the wage and labor laws by failing to pay him for required work hours. (Count 4). The district court entered summary judgment for USPS to Counts 3 and 4 of the Complaint, but found that genuine issues of material fact precluded summary judgment on Counts 1 and 2, the FMLA claims.

The bench trial commenced on May 17, 2010, with the assistance of an advisory jury of twelve people pursuant to Fed. R. Civ. P. 39(c)(1). At the conclusion of the case, the advisory jury returned a verdict for USPS. The advisory jury unanimously determined that, although Gates "proved by a preponderance of the evidence that [USPS] interfered with his right to take unpaid leave from work under the FMLA or retaliated against him because he opposed a practice made unlawful by the FMLA," USPS also showed by a preponderance of the evidence "that [Gates] would have been terminated from his job even if he had not taken FMLA leave." [R. 39, 40, Verdict, Interrogatory 1, 2]

The district court incorporated specific findings of fact into the Amended Judgment, as required under Fed. R. Civ. P. 52 (a)(1), and adopted the advisory jury's verdict. Gates appeals from the Amended Judgment.

**II.**

Gates was employed as a Transportation Networks Specialist by USPS. USPS approved Gates for intermittent FMLA leave due to gout in May 2006. Gates' certification in support of his

2

FMLA leave provided that he might need to miss one (1) to five (5) days of work per week depending on his gout pain.

Evidence at trial showed that Gates had a history of attendance issues involving unscheduled absences predating his application for FMLA leave. Following his application for FMLA leave, Gates continued to have unscheduled absences, some of which were related to his FMLA-certified condition, but many were not.

In order to demonstrate that his absences were due to his FMLA-certified condition, Gates was required to call in to the Interactive Voice Response ("IVR") telephone system to report unscheduled absences. USPS also required its employees to complete PS Form 3971 to request approval for absences, whether scheduled or unscheduled. Supervisors were responsible for approving leave requests for pay purposes, while FMLA coordinators approved or disapproved FMLA leave requests. When an employee sought FMLA leave for a particular condition, an FMLA case number for that request was generated. By using case numbers, USPS protected employees' privacy by avoiding disclosure of their medical condition, and attempted to accurately track employees' usage of FMLA leave. When an employee with an existing FMLA case number called in to the IVR system for FMLA leave, the employee was supposed to provide that number. If an employee with an approved FMLA condition did not provide the employee's case number or the system improperly recorded it, the employee could simply write his or her FMLA number on his or her leave slip, which the employee would submit upon returning to work. An employee who called in to the IVR system and requested FMLA leave but did not provide a case number indicated to the computer system that the employee did not have an approved FMLA condition on file, and that the employee needed to complete the paperwork necessary to receive FMLA coverage. Consequently,

the computer system would generate an FMLA "packet," which contained documents that had to be completed in order for the employee to obtain FMLA coverage. The cover letter of the packet informed the employee that if the absence was related to a condition for which the employee already had been approved for FMLA leave, the employee had to contact the local FMLA coordinator within five days. Employees could contact the FMLA coordinator in person, by email or by telephone. If an employee did not respond to a packet or put the FMLA case number on the employee's leave slip, the FMLA coordinator could not ascertain whether the absence was covered by the employee's existing FMLA-approved condition, meaning that the leave could not be approved as FMLA qualifying.

Between 2006 and 2008, Gates was subject to disciplinary actions regarding his unscheduled absences. Gates and his representative from the National Association of Postal Supervisors entered into several settlement agreements to resolve the disciplinary actions. Many of the absences forming the basis for Gates' discipline were not related to his FMLA-certified condition. However, in other circumstances, Gates failed to comply with the procedure set forth by USPS, so that the FMLA requests were disapproved by the FMLA coordinators, rather than by Gates' supervisors, for failure to write his FMLA case number on his leave slips or to respond to the FMLA packets issued to him. Gates often did not provide his FMLA case number (as required) when he did call in to the IVR system, and received at least sixteen different FMLA packets in 2007 and 2008. Gates did not contact the FMLA coordinator in response to any of these packets. Gates often neglected to write his FMLA case number on his leave slips, even after meeting with FMLA coordinators to discuss the requirements.

4

Nonetheless, many of the absences forming the basis for these disciplinary actions were absences for which Gates had not requested FMLA leave. On February 11, 2008, Gates received another Letter of Warning in Lieu of a 14-Day Suspension. During the time period covered by this letter of warning, Gates had twenty-six absences. On two of those, he was absent without leave. He did not request FMLA leave for two tardy appearances on September 20, 2007 and October 1, 2007. Gates did not call in to report fifteen of the twenty-six absences included in the letter of warning, despite agreeing to do so in an earlier September 2007 settlement agreement. When Gates did call in and request FMLA leave, he failed to follow proper procedures, so that the FMLA requests were disapproved by the FMLA coordinators for failure to write his FMLA case number on his leave slips or to respond to the FMLA packets issued to him.

USPS issued a notice of proposed removal to Gates on October 7, 2008. The notice of proposed removal identified sixteen unscheduled absences over a thirteen-week period. Four of the absences identified in the notice were for emergency annual leave requested for transportation problems not related to FMLA leave. Gates was absent without leave for an entire day on June 27, 2008. Only three of the sixteen absences identified on the notice of proposed removal were absences for which Gates had requested FMLA leave that had been disapproved. The remaining thirteen absences were not covered by the FMLA, and Gates never requested FMLA leave for those absences. Gates did not call in to notify USPS about seven of the sixteen unscheduled absences. On December 10, 2008, USPS issued a decision letter, and terminated Gates' employment effective January 1, 2009.

The district court found that neither of the supervisors involved in the termination decision terminated Gates in retaliation for his use of FMLA leave and that those supervisors would have

5

terminated Gates whether or not he took FMLA leave. Pennington, who made the decision to terminate Gates, testified that she approved the proposed removal because Gates had exhibited a pattern of not showing up, calling in late or failing to call in at all during the entire time he had worked for her, beginning sometime in 2002 or 2001. Lindsey testified that she began disciplining Gates for his attendance problems in 2005. She requested Gates' termination because "Mr. Gates did not improve his attendance or absences. He was constantly absent, late, AWOL, emergency annual." [R. 54, Tr., Lindsey Test., Page ID # 1187.] The district court ultimately found that "[Gates] failed to prove that his termination was related to FMLA and that Defendant proved by a preponderance of the evidence that [Gates'] termination was justified and due to excessive unscheduled absences not related to the FMLA." [R. 47, Amend. J., Page ID # 893.] The court then entered judgment for USPS.

### III.

This Court reviews "the factual findings of the district judge in a bench trial for clear error, and the legal findings *de novo*." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir. 2005). "A district court's factual findings are clearly erroneous if, based on the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 364–65 (6th Cir. 2009) (quoting *Sanford v. Harvard Indus. Inc.*, 262 F.3d 590, 595 (6th Cir. 2001)). "It is the appellant who must shoulder the burden of proving such a mistake, and this burden is not met merely by demonstrating a conflict in the testimony, nor by seeking to redetermine the credibility of witnesses." *Sawyer v. Arum*, 690 F2d. 590, 592 (6th Cir. 1982) (internal citations omitted). A reviewing court may not "reverse a district court's findings of fact because the reviewing court is convinced that it would have decided the case

6

differently." *E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 833 (6th Cir. 1997) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). "[A] choice between two permissible views of the weight of evidence is not 'clearly erroneous.'" *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949).

**IV.**

**A.**

There are two separate theories of recovery under the FMLA: the "interference" theory and the "retaliation" theory. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). The "interference" theory is based on 29 U.S.C. § 2615(a)(1), which states that employers cannot "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided . . ." by the FMLA. In order to state an interference claim pursuant to the FMLA, Gates "must show that (1) he was an eligible employee; (2) [USPS] was an employer subject to the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave [USPS] notice of his intention to take FMLA leave; and (5) [USPS] denied him FMLA benefits to which he was entitled." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012). Gates was an eligible employee and USPS was subject to the FMLA, but the parties disputed the remaining two elements at trial.

The "retaliation" or "discrimination" theory arises from 29 U.S.C. § 2615(a)(2), which states that an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To establish a *prima facie* case of retaliation pursuant to the FMLA, Gates must establish that (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of his exercise of FMLA rights, the employer took an employment action adverse

7

to him; and (4) there was a causal connection between his protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

This Court applies the Title VII burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), to both FMLA interference and retaliation claims where, as here, there is no direct evidence of unlawful conduct. *Donald*, 667 F.3d at 762. Thus, if the plaintiff establishes a *prima facie* case as to either an interference or retaliation claim under the FMLA, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). If the employer satisfies its burden of production, the plaintiff must show that the proffered reason is a pretext for unlawful discrimination. *Id.*

**B.**

Gates argues that sufficient evidence at trial demonstrated that he provided USPS with all of the notice necessary for his absences, either by written note or by using the call-in procedure, and that the absences for which FMLA leave was denied were the sole basis for termination of his employment, demonstrating an interference claim. Gates argues that the district court erred by finding, contrary to the advisory jury's determination, that USPS had not retaliated against Gates for exercising his FMLA rights, and that the district court did not make a finding regarding whether USPS interfered with Gates' FMLA rights. In support of his argument, Gates states that he provided all of the evidence necessary to obtain FMLA certification for 20 of his absences referenced in the 2008 letter of warning, that the district court ignored evidence that his absences in 2005 were eventually approved as FMLA leave for a family member, and that USPS expunged his disciplinary

8

letters received prior to 2007, and, therefore, the district court erred in considering these absences. Finally, Gates argues that, in light of *Cavin v. Honda of America Mfg., Inc.,* 346 F.3d 717, 723 (6th Cir. 2003), "employers cannot deny FMLA relief for failure to comply with their internal notice requirements."

However, Gates makes no arguments challenging the district court and advisory jury's finding that Gates' termination was justified and due to excessive unscheduled absences not related to FMLA. Thus, Gates presents arguments that are simply irrelevant to the inquiry facing this Court. In *Cavin*, the court concluded that the employer violated the FMLA because plaintiff was — in any event — terminated for failing to properly follow his employer's "internal procedural requirements that [were] more strict than those contemplated by the FMLA." *Id.* at 718, 720. By contrast, Gates would have been terminated due to excessive unscheduled absences unrelated to his FMLA leave, regardless of the exercise of his FMLA rights or his compliance with internal USPS procedures related to FMLA leave. Accordingly, *Cavin* does not apply to the instant matter.

While Gates argues that the district court ignored the advisory jury's findings[1], the district court explicitly adopted the jury's findings by stating that it "finds that the jury's findings are in accordance with the findings of fact made by the [district] [c]ourt, thus, the [c]ourt adopts the [a]dvisory [j]ury's [v]erdict." [R. 47, Amend. J., Page ID # 893.] Thus, the district court agreed with the advisory jury's findings in Interrogatory One that a preponderance of the evidence demonstrated

---

[1] Nonetheless, "[t]he district court was not required to accept the jury's verdict; in fact, the district court was required to make independent findings of fact when trying a case with an advisory jury." *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 215 F.3d 1326, 2000 WL 687681, at *7 (6th Cir. 2000) (unpublished table decision). "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state its conclusions of law separately." Fed.R.Civ.P. 52(a)(1).

9

that USPS interfered with Gates' FMLA rights or retaliated against him. In other words, the district court and the advisory jury agreed that Gates succeeded in proving a *prima facie* FMLA case.

However, while Gates' ill-fated analysis ends there, the inquiry does not. The district court and advisory jury also found, pursuant to the burden-shifting framework set out in *Douglas,* 667 F.3d at 762, for interference and retaliation claims, that Gates would have been terminated from his job even if he had not taken FMLA leave. The non-discriminatory basis for his termination—his excessive unscheduled absences—were not pretext for his termination. Thus, both the advisory jury and the district court determined that judgment should be entered in favor of USPS. As the district court concluded, Gates ultimately "failed to prove that his termination was related to FMLA[,] and [USPS] proved by a preponderance of the evidence that [Gates'] termination was justified and due to excessive unscheduled absences not related to FMLA." [R. 47, Amend. J., Page ID # 893.]

Thus, Gates' assertion that sufficient evidence was presented at trial in support of his prima facie case is true, as the district court shifted the burden to USPS to articulate a legitimate, non-discriminatory reason for terminating Gates' employment. However, Gates neglects to point to any evidence or make any argument that his termination was not justified based on his excessive unscheduled absences or that it was pretextual. Rather, the evidence submitted at trial supported that (1) Gates had a history of unscheduled absences before receiving FMLA leave in 2006, (2) Gates did not request FMLA leave for at least 4 of his unscheduled absences referenced in the Letter of Warning that he received prior to his Proposed Removal, (3) Gates had only requested FMLA leave for 3 of his 16 unscheduled absences occurring over a 13 week period that were referenced in his Notice of Proposed Removal, and (4) Gates' supervisors, Lindsey and Pennington would have terminated Gates' employment whether or not he took FMLA leave. Thus, we are not persuaded that

10

the district court's factual finding that termination was justified and due to excessive unscheduled absences unrelated to his FMLA-certified condition was clearly erroneous and we decline to disturb the verdict in favor of USPS.

## C.

Even considering Gates' arguments relating to the district court's fact findings made with respect to his *prima facie* case, we see no reason to disturb the district court's findings. Gates argues on appeal that the district court ignored evidence showing that his absences in 2005 were eventually approved as FMLA leave for care of a family member. Nonetheless, Gates admitted at trial that several of his absences in 2005, which formed the basis for his January 2006 Letter of Warning, were unrelated to his FMLA leave for care of a family member. Additionally, Gates argues that the district court erred by considering the absences referenced in the disciplinary letters received prior to 2007 because they had been expunged. Although USPS agreed in its settlement agreement, dated September 14, 2007, to expunge the pre-2007 disciplinary letters if Gates complied with certain terms, the parties disagreed as to whether Gates had complied with those terms and, thus, whether the expungement was required or actually occurred. Nonetheless, there was more than sufficient evidence entered at trial and relied upon by the district court to show that the unscheduled absences prior to 2007 occurred and that Gates continued to exhibit attendance issues, thereby relieving USPS of its duty to expunge those letters. Accordingly, we conclude the district court did not commit clear error by relying on those findings of fact.

## V.

For all of the reasons stated above, we **AFFIRM** the district court's judgment.

11