NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0561n.06

No. 09-5956

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
**Aug 27, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| LOCAL UNION 369, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, | ) ) ) ) |  |
| Plaintiff–Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | EASTERN DISTRICT OF KENTUCKY |
| ADT SECURITY SERVICES, INC., | ) ) |  |
| Defendant–Appellee. | ) ) ) |  |

Before: KEITH, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff–appellant, the union representing Todd Reynolds, a security system installer, brought suit in district court seeking enforcement of an arbitration award requiring defendant–appellee ADT Security Services ("ADT") to reinstate Reynolds to his position in its employment. ADT fired Reynolds for failing to disclose a non-compete agreement he had signed with Sonitrol, his previous employer. An arbitrator held, however, both that Reynolds did not intentionally hide the agreement and that the agreement was not enforceable. ADT reinstated Reynolds but, four months later, asked him not to return to work when a Kentucky state court held in tort litigation against Sonitrol that the non-compete agreement was enforceable. The district court granted summary judgment on the ground that the union had failed to exhaust the contractually obligated grievance process before bringing suit in federal court. We affirm.

I.

Beginning in 2003, Todd Reynolds installed, managed, and repaired alarm systems as an employee of Sonitrol. As part of his contract with Sonitrol, Reynolds signed a non-compete agreement. The non-compete agreement provided that, for a period of three years after the end of Reynolds's employment with Sonitrol, Reynolds could not "[e]ngage in, directly or indirectly, [Sonitrol's] business or any other business in competition with the active business activities of [Sonitrol]." The agreement also provided for $10,000 in liquidated damages in the event of Reynolds's breach. Reynolds left Sonitrol for a higher-paying position with ADT in August 2006. As an employee of ADT, Reynolds became a member of the local electrical workers' union and was therefore subject to the union's collective bargaining agreement with ADT. The collective bargaining agreement provided for a four-step administrative procedure that "shall be followed for the purpose of adjusting grievances." Should either the union member or ADT be unsatisfied by the first three steps in the process, the fourth step directed that "the grievance shall be subject at the instance of either party to arbitration[.]" Any arbitral award was binding on both parties.

On September 10, 2007, counsel for Sonitrol wrote to Reynolds to inform him that he was in violation of the non-compete agreement and to demand that he terminate his employment with ADT immediately. Reynolds informed ADT of the letter, and, on September 26, ADT informed the union that it had "no choice but to process Mr. [Reynolds's] termination for failing to disclose and/or falsifying his application for employment regarding his non-compete with his prior employer and its' [*sic*] restriction on his employability with ADT." ADT agreed to waive the first three steps of

the grievance procedure and submit Reynolds's grievance directly to an arbitrator, limiting the issue

to whether Reynolds "was discharged for cause."

After a hearing on October 23, 2007, the arbitrator issued an opinion in favor of Reynolds.

The arbitrator found credible Reynolds's assertion that he did not remember signing the non-compete

agreement. Because falsification of an employment application is grounds for termination only if

it was intentional, the arbitrator concluded that the grounds for termination proffered by ADT did

not constitute cause to dismiss Reynolds. However, the arbitrator also reasoned that "it would be

inappropriate to reinstate [Reynolds] if in fact he is contractually barred from working for ADT.

Hence, it is necessary to examine the enforceability of the 'non compete agreement.'" The arbitrator

found the agreement unenforceable because Sonitrol did not train Reynolds in new and unique skills

nor employ him in sales or research and development and thus, under Kentucky law, Sonitrol had

no property interest to be protected by a non-compete agreement. The arbitrator ordered ADT to

reinstate Reynolds to his position.

Meanwhile, on October 9, 2007, Reynolds filed an action in state court against Sonitrol,

alleging intentional interference with his contractual relationship with ADT and seeking damages.

Sonitrol counterclaimed against Reynolds for breach of contract and against ADT for tortious

interference with contract. On January 24, 2008, the Kentucky state court found that the non-

compete agreement was enforceable and dismissed Reynolds's suit. On February 25, 2008, the court

found that Reynolds had breached the non-compete agreement and issued a temporary injunction

preventing Reynolds from working for ADT pending Sonitrol's posting of a $5,000 bond. Following

these decisions, ADT entered into an agreement with Sonitrol under which Sonitrol would drop all claims against ADT in exchange for termination of Reynolds's employment with ADT.

ADT then informed Reynolds that he was not to return to work and took away his work vehicle. ADT never issued a new written notice stating the grounds for termination. Later, the Kentucky Court of Appeals found the temporary injunction to be nugatory because Sonitrol never posted the required bond. On remand, the state trial court awarded Sonitrol $10,000 in liquidated damages against Reynolds for breach of contract.

The union then filed suit on Reynolds's behalf in federal district court under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141, *et seq.* The complaint alleged that "ADT's refusal to reinstate Reynolds is contrary to the collective bargaining agreement and the arbitration award . . . , and in the absence of an enforceable injunction there is no lawful ground to fail to comply with that award." The union demanded injunctive relief requiring ADT to reemploy Reynolds and damages of back pay and benefits. ADT moved to dismiss the case on the ground that the union had failed to exhaust its administrative remedies because it had failed to file a grievance regarding his second termination. In the alternative, ADT argued that the relief that the union requested violates clear public policy in that it would require ADT to reinstate Reynolds despite the state court ruling that the non-compete agreement was valid and binding. In addition to opposing the motion, the union filed a statement pursuant to Federal Rule of Civil Procedure 56(f), arguing that there were various factual issues that required discovery before the court could decide the case.

Because it relied on matters and affidavits outside of the pleadings in rendering its decision, the district court treated ADT's motion to dismiss as a motion for summary judgment. The district

court found that, after Reynolds was reinstated to his position with ADT pursuant to the arbitration award, he was subject to any lawful disciplinary action or discharge, just like any employee. The court found, therefore, that when ADT requested that Reynolds not return to work in February 2008, the union had to pursue its contractual grievance remedies before filing a lawsuit. According to the district court, the arbitrator's award could not be the basis for reinstatement because the award did not address the second adverse action. As the union had failed to utilize the grievance process, the court granted summary judgment for ADT on the ground of lack of jurisdiction. The court also held that the union's Rule 56(f) statement failed because the factual issues that the union claimed required discovery were irrelevant to the issue of exhaustion. The union timely filed a notice of appeal.

II.

Initially, we note that the district court's characterization of this decision is unusual. The failure to exhaust contractual arbitration procedures generally results not in summary judgment but in dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Youseff v. Ford Motor Co.*, 225 F.3d 660, 2000 WL 799314, at *3 n.3 (6th Cir. June 6, 2000) (unpublished table decision). And, if a complaint is indeed dismissed, generally the dismissal is without prejudice. Despite the unusual procedural posture, because the union does not appeal the district court's decision to convert the motion to dismiss into a motion for summary judgment, we review *de novo*, as we would any grant of summary judgment. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008); *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (*en banc*). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c)(2). The court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.

A.

"It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a § 301(a) suit against the employer." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983); *see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."). In this case, however, the collective bargaining agreement states that "[t]he decision of the arbitrator shall be binding on both parties for a period to be named in the arbitration decision." The union argues, therefore, that further exhaustion was unnecessary because the issue of the enforceability of the non-compete agreement had already been decided by the arbitrator; the arbitral award was still binding on ADT; and, therefore, regardless of the intervening state court judgment, "there was no reason for the Union to re-grieve and re-arbitrate the same questions." ADT argues, on the other hand, that two salient events that occurred after the arbitrator's decision—Sonitrol's taking legal action to enforce the non-

6

compete agreement and the state court's holding that the agreement was enforceable—created a new factual predicate for the second adverse employment action, and, therefore, a new grievance proceeding was necessary.

The task of federal district courts in reviewing an arbitral award is limited to determining whether it is enforceable. It is not the province of federal courts to resolve the merits of employment disputes, especially those in which arbitration is provided for by a collective bargaining agreement. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). According to the union, initiation of the grievance process is unnecessary when no written notice of termination has been furnished to the employee. Thus, the union argues that, because ADT failed to present Reynolds with a second written notice of termination, no second grievance process was necessary. The union argues alternatively that Reynolds was not in fact discharged at all but was instead placed on a temporary furlough.

The union's arguments face a number of difficulties. First, no provision of the collective bargaining agreement requires written notice of any form to be given in order for a dispute to be grievable. Thus, the collective bargaining agreement does not support the union's position. Second, the union's efforts to characterize Reynolds's termination as ambiguous or uncertain are irrelevant to the only task before the district court. That task was to determine whether to enforce the arbitral award by finding that the adverse action was within its scope or determine that the action was "something else" and dismiss Reynolds's claim for lack of exhaustion. We agree with ADT that the critical events between the two employment actions—the issuance of the state court ruling and Sonitrol's attempt to enforce its contractual rights—created new facts on which ADT could rely in

7

terminating Reynolds a second time. Whether Reynolds was in fact terminated, placed on furlough, or placed in some other status, ADT executed a second action with respect to Reynolds's employment status beyond the scope of the original arbitral award.

The union, therefore, could not have relied upon the arbitral award to prevail on its claim that Reynolds was wrongfully terminated. Because the action in the district court could only have been an action to enforce the award, it necessarily fails. The union's merits arguments regarding the propriety of the second adverse employment action must have been submitted to the arbitrator first—not to the federal district court—and the union's failure to exhaust necessitates dismissal of the suit. The union argues that public policy dictates that the arbitrator's award be enforced, but this is a merits issue to be resolved as part of a second arbitration. Because the union failed to exhaust its contractual remedies, the district court properly granted summary judgment.

We note, however, that the district court erred in failing to specify that the dismissal was without prejudice. Dismissal for lack of exhaustion of administrative remedies should generally be without prejudice, allowing the plaintiff to refile his suit once he completes the proper grievance process. We recognize, based on the parties' representations, that the distinction of with or without prejudice is of no practical import here since the time period within which a grievance could be filed expired long ago. But we nevertheless believe that the disposition should be stated correctly.

B.

The union also argues that it was improper for the district court to grant summary judgment before any discovery was conducted. This court reviews for abuse of discretion the district court's decision to grant summary judgment before discovery. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 419

(6th Cir. 2008). In determining whether there was an abuse of discretion, this court generally considers a variety of factors, one of which is "whether the desired discovery would have changed the ruling below." *Id.* at 420 (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995)) (internal quotation marks omitted). The union's Rule 56(f) affidavit stated that discovery was needed to develop facts regarding ADT's agreement with Sonitrol, the reasons behind the second termination, damages suffered by Sonitrol, and the validity of the non-compete agreement. As the district court held, these issues are irrelevant to the dispositive issue of whether the union has exhausted the contractual grievance process. The discovery requested in the Rule 56(f) affidavit would not change the outcome of the ruling below, and, therefore, the district court's decision to deny discovery was not an abuse of discretion.

IV.

For the reasons set forth above, we affirm the district court's grant of summary judgment for failing to exhaust contractual remedies.