NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0245n.06

No. 13-4353

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff - Appellee, | ) | May 09, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| THOMAS E. PARENTEAU, et al., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| Defendants, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| | ) | |
| MKP INVESTMENTS, INC., | ) | |
| | ) | |
| Interested Party – Appellant. | ) | |

BEFORE:    ROGERS and WHITE, Circuit Judges; HOOD, District Judge.[*]

ROGERS, Circuit Judge.  This appeal presents the question of whether a company that is wholly owned by a criminal defendant, that is completely controlled by the defendant, and that owns assets integral to the defendant's crimes is a proper petitioner under 21 U.S.C. § 853(n)(2), which allows persons "other than the defendant" to petition to amend a forfeiture order. The company argues that it has a legal identity separate from the defendant and that Ohio alter-ego law provides no basis for treating the company and the defendant as the same person.  The company's petition, however, does not require application of state law.  Because the company is not a party other than the defendant under § 853(n)(2), its petition was properly dismissed.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

MKP Investments, LLC (MKP) is a parent company owned by Thomas Parenteau,[1] who was in the business of building and selling luxury homes. In 2002 and 2003, MKP bought four key-man life insurance policies—each with a face value of approximately $5 million—on the life of Thomas's father, Roger Parenteau. MKP is the owner and beneficiary of the policies. Roger passed away in 2009.

During the early-to-mid 2000s, Thomas was the mastermind of a tax evasion, bank fraud, and money-laundering conspiracy. Thomas was convicted on multiple charges for his role in those conspiracies. At the forfeiture proceeding, the district court entered a preliminary order of forfeiture, holding that the Government was entitled to a money judgment as well as the forfeiture of "all of [Thomas's] interest in the [four] insurance policies." The district court reasoned that the policies were forfeitable under 18 U.S.C. § 982(a)(1) because the policies were "involved in" the money-laundering conspiracy. "[T]he life insurance policies," the court found, "were instrumental to all of [Thomas]'s criminal activities." After the district court entered that order, Thomas filed an ancillary petition under 21 U.S.C. § 853(n)—on behalf of MKP and as MKP's "Managing Member"—to amend the forfeiture order. The petition sought to remove MKP's interest in the insurance policies from the order. Petitioners in § 853(n) ancillary proceedings may attempt to modify a forfeiture order on two bases: on the basis of vested or superior title, *see* § 853(n)(6)(A), or on the basis that the petitioner is a bona fide purchaser for value, *see* § 853(n)(6)(B). MKP has sought relief only under the former provision.

The Government responded to MKP's petition by filing its own motion to amend the forfeiture order, arguing that MKP is Thomas's alter ego and that the forfeiture order should be amended to reflect that MKP's interest in the policies, too, is forfeited. In the alternative, the

---

[1] This opinion uses first names because the family members relevant to this case share the same last name.

Government urged that it was entitled to the forfeiture of Thomas's interest in MKP as a "substitute asset" under 21 U.S.C. § 853(p).[2]

At an ancillary hearing, MKP presented evidence demonstrating that it had owned one of the policies since 2002 and the three others since 2003. The provision that MKP's petition invoked, § 853(n)(6)(A), protects those who hold better title to the forfeitable property than the Government. That provision allows a petitioner to remove "a legal right, title, or interest" from a forfeiture order if the petitioner proves that "the right, title, or interest was vested in the petitioner rather than the defendant" or "was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." MKP asserted that it satisfies the "vested in" part of § 853(n)(6)(A), as the company rather than Thomas has always owned the policies. MKP also claimed that it satisfies the "superior to" part of the statute, arguing that it had obtained an interest in the policies before Thomas committed the money-laundering crimes on which the forfeiture was based. The Government countered that the evidence adduced in the Thomas's trial—which § 853(n)(5) requires a district court to consider in an ancillary proceeding—showed that MKP was Thomas's alter ego. The Government also submitted evidence demonstrating that Thomas had been MKP's sole owner in 2003 and 2005. In addition, MKP's counsel conceded that Thomas was MKP's only member at the time of the hearing. At the ancillary hearing, MKP thus did not present any evidence relevant to its separate identity except for a document indicating that the company had been formed in Ohio.

The district court denied MKP's petition and amended the forfeiture order to include MKP's interest in the policies, holding that "the record conclusively establishes that MKP is the

---

[2] Under the Government's theory, the forfeiture of Thomas's interest in MKP would partially satisfy the money judgment entered against Thomas. Section 853(p) allows for the forfeiture of substitute assets if some of the forfeitable property cannot be located or is unavailable.

alter ego of Thomas Parenteau." In reaching that conclusion, the district court purported to apply Ohio law as summarized by a panel of this court in *In re Fisher*, 296 F. App'x 494, 506 (6th Cir. 2008). In the view of the *In re Fisher* court, Ohio recognizes a "direct liability" variation on the alter-ego concept. *Id.* According to the *In re Fisher* court, that theory may apply where two entities "are the same entity and therefore liability is direct." *Id.* The district court in this case concluded that MKP's petition should be analyzed under that theory and that several factors compelled the conclusion that MKP and Thomas are the same person for purposes of this ancillary petition. Those factors included MKP's failure to observe corporate formalities, Thomas's diversion of corporate funds for personal use, MKP's role as a "mere façade," and MKP's failure to present corporate records. The district court also noted that in a related civil case, the court had held that MKP was a RICO enterprise that was controlled by Thomas. On appeal, MKP argues that Ohio law governs the alter-ego analysis and that Ohio law neither recognizes *In re Fisher*'s direct liability theory nor provides any other basis for holding that MKP is Thomas's alter ego.

Because MKP is not a proper petitioner under 21 U.S.C. § 853(n)(2), its petition was correctly dismissed and the forfeiture order was correctly amended to reflect that MKP has forfeited its interest in the policies. Section 853(n)(2) provides that "[a]ny person, *other than the defendant*, asserting a legal interest in property which has been ordered forfeited" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." (Emphasis added). A petitioner may thus seek to amend a forfeiture order under § 853(n)(6)(A) only if the petitioner also satisfies § 853(n)(2)'s requirements. MKP cannot satisfy one of those requirements, however, because the company cannot fairly be considered someone "other than" Thomas. The evidence conclusively shows that Thomas and MKP are not distinguishable for

purposes of § 853(n)(2), as MKP has presented almost no evidence of a separate identity in this ancillary proceeding, Thomas owned and exercised total control over MKP, and Thomas used the insurance policies as an integral part of his crimes. MKP's ancillary petition is therefore barred.

## I.

As an initial matter, the fact that an ancillary petition is not in the name of the criminal defendant is not, by itself, enough to conclude that the petitioner is a person other than the defendant. Although few courts appear to have addressed § 853(n)(2)'s "other than the defendant" language, two policies in the federal forfeiture scheme—which relate to the purpose of forfeiture and the finality of the defendant's sentence—indicate that the language should be read to bar the petition of an entity like MKP that is not only wholly owned by a criminal defendant, but also is dominated by the defendant to the same extent as MKP. As for the first policy, the primary purpose of criminal forfeiture under a statute like 18 U.S.C. § 982(a)(1), the one that rendered the insurance policies forfeitable, is to punish the defendant. *See Libretti v. United States*, 516 U.S. 29, 39 (1995); *see also United States v. O'Dell*, 247 F.3d 655, 678 (6th Cir. 2001) (quoting *United States v. Smith*, 966 F.2d 1045, 1052 (6th Cir. 1992)). Criminal forfeiture is therefore part of a defendant's sentence. *See United States v. Corrado*, 227 F.3d 543, 549 (6th Cir. 2000) (citation omitted). The second policy relates to the Government's interest in finality: a defendant's only opportunities to challenge forfeiture are at the forfeiture proceeding and on appeal of the sentence. At the forfeiture proceeding, the defendant may present evidence to a court or a jury. Fed. R. Crim. P. 32.2(b)(1)(B), (b)(5). The court's forfeiture order becomes final as to the defendant at sentencing, *see* Fed. R. Crim. P. 32.2(b)(4)(A), and the defendant may challenge the forfeiture only by appealing that order.

Section 853(n)(2) thus ensures that a defendant cannot collaterally attack the forfeiture order after the defendant has exhausted an appeal, as Thomas has. These two policies indicate that § 853(n)(2) should be read to exclude petitioners like MKP from an ancillary proceeding. An interpretation of the statute that would allow the petition of a corporate entity solely because that entity is legally distinct from a natural person would be inconsistent with both of these policies. Section 853(n)(2) is best read to preclude such a result.

In this case, several circumstances require the conclusion that MKP is not someone other than Thomas within the meaning of § 853(n)(2). Most compellingly, MKP presented no evidence at the ancillary hearing that it has an identity separate from Thomas, aside from the fact that the entity was incorporated. MKP presented no evidence that it followed corporate formalities. Nor did MKP introduce any corporate records. What is more, MKP has not contested the district court's factual findings on appeal, including the findings that MKP was "completely dominated" by Thomas, that MKP was a "mere façade," and that Thomas "diverted funds from MKP for his personal use." Indeed, MKP's counsel conceded at oral argument that MKP cannot prevail if Ohio veil-piercing law does not apply.[3] The dearth of evidence on MKP's separate identity provides good reason to conclude that MKP and Thomas are not distinguishable for purposes of this ancillary petition.

Thomas's ownership and total control of MKP further support the conclusion that MKP is not a person other than Thomas, although we do not rely on these factors alone. Thomas was the sole owner of MKP at the time of the ancillary hearing and petitioned for relief on MKP's behalf, as MKP's "Managing Member." At Thomas's criminal trial, he testified that "[t]here's no question I own MKP Investments" even though MKP "was legally in [Marsha Parenteau's]

---

[3] *See* Oral Argument at 4:50, *United States v. Thomas Parenteau, et al.* (No. 13-4353), *available at* http://www.ca6.uscourts.gov/internet/court_audio/aud1.php.

name since approximately 2000." Moreover, other evidence suggests that Thomas would transfer ownership of MKP between family members as he pleased. Evidence from a civil case indicates that at one time MKP was 99% owned by Marsha, Thomas's wife, and 1% owned by Jeffrey Parenteau, Thomas's stepson. Marsha and Thomas also sometimes represented that they were co-owners of MKP. The district court's finding that "Thomas Parenteau completely dominated MKP" is thus fully supported by the record.[4]

The conclusion that Thomas's ownership and control of MKP are relevant to the § 853(n)(2) analysis is supported by the Second Circuit's decision in *United States v. Peters*, 732 F.3d 93 (2d Cir. 2013). *Peters*, like the present case, involved an individual's forfeiture of assets that were tied to companies that the defendant owned. *Id.* at 102. The forfeiture statute in that case provides for the forfeiture of proceeds that are "obtained . . . indirectly" from a defendant's crimes. 18 U.S.C. § 982(a)(2). At issue was whether the defendant could be said to have indirectly obtained, through two companies that he owned, the proceeds of fraudulent loans. *See Peters*, 732 F.3d at 102. In other words, the court was tasked with deciding whether those proceeds could be included in the defendant's forfeiture order. The district court and the Second Circuit both held that the defendant was personally liable for the forfeitable proceeds, but did so for different reasons. The district court ordered forfeiture on the basis that the companies were the defendant's alter egos under New York law. *Id.* The Second Circuit, by contrast, held that state alter-ego law did not apply. *Id.* at 103. The court reasoned that under the plain language of § 982(a)(2), a defendant indirectly obtains proceeds through a company if he controls and dominates the company to such an extent "that money paid to the corporation [i]s effectively under the control of the individual." *Id.* at 103–04. According to the *Peters* court, factors

---

[4] Although the district court made factual findings in the context of Ohio alter-ego law, those findings are also relevant to the statutory question of whether MKP is someone other than Thomas.

relevant to that inquiry "include the individual's ownership interest . . . [and] the level of control he exercised over the company." *Id.* at 104. These factors, among several others, pointed to the conclusion that the defendant had indirectly obtained the loan proceeds. *Id.* The ownership and control factors that the court identified in *Peters* are similarly relevant to whether a defendant's company is someone other than the defendant. Moreover, although the *Peters* court interpreted 18 U.S.C. § 982(a)(2) and not 21 U.S.C. § 853(n)(2), the court's holding had the effect of treating the defendant and his companies as identical entities for purposes of § 982(a)(2). The defendant was thus held liable for the loan proceeds even though the proceeds went through his companies, two entities that were distinct from the defendant as a technical matter. *Peters* accordingly provides strong support for our analysis of § 853(n)(2).

In addition to Thomas's ownership and control of MKP, Thomas's extensive use of the insurance policies in his bank fraud and money-laundering scheme also indicates that MKP is not someone other than Thomas. In the forfeiture order in this case, the district court explained how the policies were instrumental to Thomas's criminal conspiracies. Among other things, Thomas "used the laundered proceeds of the loan application fraud to pay premiums on the policies, and then removed the funds in the form of loans from the policies, which he then deposited into his accounts to falsely give the appearance of income when applying for loans." The policies were thus "used to commit, facilitate, and disguise or conceal th[e] money laundering offenses," according to the district court. As the district court reasoned in denying MKP's petition, the evidence shows "that MKP was a mere tool for Thomas Parenteau's personal gain." Nothing suggests that MKP's legal existence ever stood in the way of Thomas's manipulation of MKP's assets. The fact that MKP's primary assets were so involved in Thomas's schemes is strong proof that MKP is no different than Thomas for this ancillary proceeding.

*Peters*, again, supports the finding that Thomas's use of the policies is relevant to § 853(n)(2). In that case, the Second Circuit noted that a defendant's "use of corporate assets for his personal expenses" was another factor, in addition to ownership and control, that was relevant to whether the defendant could be held accountable for the forfeiture of proceeds that were connected to his companies. 732 F.3d at 104. Here, as in *Peters*, that factor indicates that MKP is not someone other than Thomas.

In short, MKP is not a person other than Thomas within the meaning of § 853(n)(2), and so the company cannot properly petition for relief.

## II.

MKP argues that courts must apply state law to determine the nature of a petitioner's rights in an ancillary proceeding, that Ohio law recognizes companies as independent legal entities, and that nothing in Ohio law allows a court to treat Thomas and MKP as the same person. We need not decide, however, whether Ohio law would permit a court to hold that MKP and Thomas are alter egos and whether *In re Fisher* accurately summarized Ohio law. State law does not govern this appeal.

In the first place, the presumption is that "in the absence of a plain indication to the contrary," a federal statute's application "is not . . . dependent on state law." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989) (citation omitted). Indeed, the Second Circuit in *Peters* applied this presumption to determine whether 18 U.S.C. § 982(a)(2) requires application of state law. *Peters*, 732 F.3d at 103 & n.4. This presumption counsels against applying state law to determine whether MKP is someone other than Thomas, and nothing in § 853(n)(2) rebuts the presumption. Section § 853(n)(2)'s "other than the defendant" clause uses no words suggesting a link to state law. This stands in contrast to another part of § 853(n)(2) that

uses the word "property," a term that refers to rights that have traditionally been defined by state law.

Because the issue in this appeal is not whether MKP has a property right in the first place but rather *who* is eligible to petition for relief, our precedents interpreting the requirement in § 853(n)(2) that a petitioner "assert[] a legal interest in property" do not apply. In several cases, we have held that courts must apply state law to determine whether a petitioner has the legal interest in property that § 853(n)(2) requires. *See United States v. Salti*, 579 F.3d 656, 668–69 (6th Cir. 2009); *United States v. 2525 Leroy Lane*, 910 F.2d 343, 347 (6th Cir. 1990). In *2525 Leroy Lane*, for instance, the issue was whether the defendant's wife, who had petitioned to amend a forfeiture order, retained an interest in property that she had held in a tenancy by the entirety with her husband at the time of his criminal acts. 910 F.2d at 346–47. We noted that "[t]he forfeiture provisions of 21 U.S.C. §§ 853 and 881 contain no rules of law for defining the scope of an innocent owner's property interests" and concluded "that it is appropriate to refer to state law in determining the nature of the property interest claimed by a third party." *Id.* at 349. Determining the petitioner's entitlement to relief under § 853(n)(6)(A) thus required examining state law on tenancies by the entirety and tenancies in common. *Id.* at 349–51. Similarly, in *Salti*, the petitioner asserted a marital interest in a forfeited Swiss bank account. 579 F.3d at 668. Swiss law, we held, determined whether the petitioner held a valid interest in the bank account. *Id.* at 669. In those cases, we thus applied state law to determine whether the petitioners held valid property interests in the first instance. On the other hand, this appeal does not implicate the scope or existence of MKP's property rights.

In addition, interpreting § 853(n)(2) without reference to state law does not involve creating so-called federal common law. Construing that statute to bar MKP's petition involves

ordinary statutory construction. As the Supreme Court has stated, "the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt." *Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 97 (1981). "The authority to construe a statute lies at the very heart of judicial power . . . ." *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1245 (6th Cir. 1990). As we recognized in *Anspec*, courts create federal common law when they expand or contract the reach of a clear statute, or add or delete remedies from a statutory scheme. *Id.* Nothing of the sort would occur by applying § 853(n)(2) to the facts of this case.

### III.

Although the district court did not interpret § 853(n)(2)'s "other than the defendant" language, we may affirm on alternative legal grounds that are amply supported by the record. *See Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009) (citing *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 361 (6th Cir. 2007)). The issue has been briefed on appeal.

The judgment of the district court is affirmed.

**HELENE N. WHITE, Circuit Judge, concurring.** I write separately to clarify what I understand to be the limits of the majority opinion and address several additional points.

First, the government did not argue in the district court that federal law controls whether MKP can properly bring an ancillary petition under § 853(n)(2). Rather, it took the position that under Ohio law, MKP's petition under § 853(n)(6)(A) failed because MKP and Thomas Parenteau were the same person with respect to forfeiture of the policies, and therefore MKP did not have an interest "vested in [it] rather than the defendant or [that] was superior to" Thomas's interest at the time of the offense. Thus, the majority's choice to decide this case under § 853(n)(2) by applying federal law and find it unnecessary to address Ohio law could just as easily, and appropriately, be turned on its head: Both parties relied on Ohio law below, waiving any argument that federal law controls; Ohio law as set forth in *In re Fisher*, 296 F. App'x 494, 506 (6th Cir. 2008), and *Danziger v. Luse*, 815 N.E.2d 658 (Ohio 2004), supports the district court's decision; and thus we need not address whether federal law controls, or the meaning of "other than the defendant" under § 853(n)(2). *See Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 576 (6th Cir. 2013) ("Absent 'exceptional circumstances,' we normally decline to rule on an issue not decided below." (quoting *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003))).[1]

Second, § 853(n)(2) merely authorizes a third party to petition for a hearing to adjudicate the validity of the third party's alleged interest in the property subject to forfeiture. It is unclear how a district court can make a fact-based "other than the defendant" determination pursuant to § 853(n)(2) prior to the hearing authorized by § 853(n)(2). Rather, the statute is more naturally

---

[1] Further, the initial criminal forfeiture order forfeited Thomas's interest in the policies; it did not purport to forfeit MKP's interest. MKP's petition therefore simply asserted that Thomas had no interest in the policies and MKP held a superior interest. It was the government's motion to amend the forfeiture order to include MKP's interest in the policies that resulted in the forfeiture of MKP's interest. Thus, it is questionable whether § 853(n)(2) is at issue at all.

read as authorizing the district court to make a finding, after a hearing, that the petitioner does not have a superior interest to the defendant under § 853(n)(6)(A). Indeed, the district court in this case only made its alter-ego determination after conducting the hearing described in § 853(n)(2), which further calls into question whether § 853(n)(2) is at issue here.

Third, assuming § 853(n)(2) is at issue and federal law controls, I agree that under these circumstances a district court could fairly find that MKP is not an entity "other than the defendant." However, such a conclusion is fact based and requires more than ownership, control, and misuse of the corporate entity by the defendant. If, for example, a corporation is wholly owned and controlled by a defendant who misuses the assets of the corporation to commit financial crimes, but that corporation also conducts business at arm's length with third parties, I would not conclude that the defendant and the corporation are the same entity, stripping the company of the ability to assert a superior right in the corporate asset. Rather, the government should have to defend against the corporation's petition on the merits, or seek to forfeit the defendant's interest in the corporation and be subject to the legitimate claims of corporate creditors. Here, MKP offered no evidence establishing a separate existence other than the corporate form.

Thus, although I would decide this case based on the reasoning employed by the district court, I agree with the majority that MKP's ancillary petition was properly denied.