NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0355n.06

No. 16-4147

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RUTHERLAN ENTERPRISES, INC., d/b/a Island )
Ace Hardware, )
)
         Plaintiff-Appellant, )
)
v. )
)
ZETTLER HARDWARE, et al., )
)
         Defendants-Appellees. )
)
)
)

**FILED**
Jun 21, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE: KEITH, BATCHELDER, and SUTTON, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.** Rutherlan Enterprises, Inc. ("Rutherlan"), appeals

the district court's grant of summary judgment to Zettler Hardware ("Zettler"), Nicholas Zettler

("Nicholas"), owner of Zettler, Peter Michailidis ("Michailidis"), Alexander Rouse ("Rouse"),

and Luke Stratton ("Stratton") (collectively, "Defendants"). Rutherlan argues that: (1) the

district court abused its discretion when it denied Rutherlan's First Motion to Extend Discovery

during its 2011 case and (2) the district court erroneously granted summary judgment in favor of

Defendants on Rutherlan's Fraudulent Misrepresentation, Breach of Contract, Breach of

Warranty, and Unjust Enrichment claims. We **AFFIRM**.

## I.    BACKGROUND

Sometime between 2002 and 2005, Rouse and Stratton created Substruct Systems, LLC

("Substruct") to develop a point-of-sale ("POS") computer system for Zettler and other retail

hardware stores. Michailidis was a Substruct employee. Nicholas gave the other Defendants $10,000 to help develop the software. In Fall 2008, Defendants solicited Rutherlan to buy their POS system. In December 2008, Rutherlan agreed to purchase the system. However, Rutherlan soon found that the system had several defects that greatly interfered with its business. Consequently, Rutherlan's president terminated its contract with Substruct on September 30, 2009.

On October 12, 2010, Rutherlan filed its first complaint solely against Substruct in Hawaii state court, but the complaint was dismissed for improper venue. On September 26, 2011, Rutherlan filed suit in federal district court solely against Substruct. However, it voluntarily dismissed the action on March 6, 2013. We refer to that action as the "2011 case."

On January 7, 2014, Rutherlan re-filed its complaint in the Southern District of Ohio, but this time the complaint was against Substruct and the individual Defendants, for alleged breach of contract, unjust enrichment, fraudulent misrepresentation, and breach of express and implied warranties. On September 2, 2014, Defendants filed a motion for summary judgment, which the district court granted only as to the fraudulent misrepresentation claim. On July 1, 2015, the district court ordered Substruct into default. On September 25, 2015, during his deposition, Stratton stated that the business was "off and going" as soon as they received their first sale and that Substruct held corporate meetings. On November 10, 2015, the remaining Defendants filed a second motion for summary judgment. Rutherlan responded in opposition to the motion and Defendants filed a reply. On August 26, 2016, the district court granted the motion for summary judgment, which dismissed Rutherlan's complaint entirely.

## II.    DISCUSSION

### A.    <u>Denial of Motion to Extend Discovery Deadline</u>

Rutherlan argues that the district court erred by denying its motion to extend the discovery deadline during its original action against Substruct in the 2011 case. Rutherlan argues that it was prejudiced in the current action because of that discovery motion denial. Rutherlan points to the fact that the district court denied its fraudulent misrepresentation claim on summary judgment on the basis that the Ohio Savings Statute did not preserve its claim, because Rutherlan added new parties in its re-filed complaint in 2014. Rutherlan argues that if it had an opportunity for discovery in the 2011 case, it would have been able to add the additional parties at that time, but instead was forced to voluntarily dismiss the case.

This argument is unavailing. As this court has held, "when a voluntary dismissal is without prejudice the plaintiff is placed 'in a legal position as if he had never brought the first suit' and has the right to bring a later suit on the same cause of action without adjudication of the merits." *Dearth v. Mukasey*, 516 F.3d 413, 415 (6th Cir. 2008) (quoting *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976)). Thus, the denial of discovery extension is immaterial because Rutherlan voluntarily dismissed that case. This court may not deal with that issue.

Rutherlan argues that we must conclude otherwise because in *Local Union 369, IBEW v. ADT Sec. Servs.*, 393 F. App'x 290, 295 (6th Cir. 2010), we held that when "the desired discovery would have changed the ruling below," the district court abused its discretion. *Id.* (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)). However, *Local Union 369* is factually inapposite to this case because there, the district court granted a summary judgment motion against the appellant before discovery. In Rutherlan's case, however, the dismissal was voluntary and of its own accord, not by judgment of the district court. Rutherlan cannot now

attempt to appeal that 2011 dismissal because it was voluntary and without prejudice, *see,*

*Dearth*, 516 F.3d at 415, and thus, it is not in a position to challenge the district court's discovery

decision in that case. Consequently, we will not address this argument.

## B.     Grant of Summary Judgment

### i.     Standard of Review

"We review the district court's denial of summary judgment *de novo*, using the

same Rule 56[] standard as the district court." *Moldowan v. City of Warren*, 578 F.3d 351, 373

(6th Cir. 2009) (citation omitted). "Summary judgment is proper if the evidence, taken in the

light most favorable to the nonmoving party, shows that there are no genuine issues of material

fact and that the moving party is entitled to a judgment as a matter of law." *Coble v. City of*

*White House, Tenn.*, 634 F.3d 865, 867–68 (6th Cir. 2011) (citation and quotation marks

omitted). Because this is a diversity case from Ohio, we apply the substantive law of Ohio. *See*

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### a.  Fraudulent Misrepresentation

The district court granted Defendants' summary judgment motion against Rutherlan on

its fraudulent misrepresentation claim because the claim was filed in violation of the statute of

limitations. Pursuant to Ohio Rev. Code § 2305.09(C), a fraud claim must be brought within

four years after the cause has begun to accrue. The parties do not dispute that the complaint at

issue on appeal was filed more than four years after the alleged fraud took place. However,

Rutherlan argues that the Ohio Savings Statute preserved the complaint.

The Ohio Savings Statute states:

In any action that is commenced or attempted to be commenced, if in due time a
judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon
the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the
plaintiff's representative may commence a new action within one year after the

> date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

Ohio Rev. Code § 2305.19(A).

The district court concluded that pursuant to *Children's Hospital v. Ohio Dept. of Public Welfare*, the Ohio Savings Statute was inapplicable to the claim because Rutherlan's newly-filed action added new parties that were not included in its 2011 case. Generally, under Ohio law, "[t]he savings statute applies when the original suit and the new action are substantially the same." *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 433 N.E.2d 187, 189 (Ohio 1982) (citation omitted). "The actions are not substantially the same, however, when the parties in the original action and those in the new action are different." *Id.* (citing *Nat'l. Fire Ins. Co. v. Joslyn Mfg. Co.*, 265 N.E. 2d 791, 792 (Ohio Ct. App. 1971)).

On appeal, Rutherlan argues that the district court's reliance on *Children's Hospital* was inappropriate. Rutherlan relies upon *Cox v. Ohio Parole Com'n*, 509 N.E.2d 1276, (Ohio Ct. App. 1986), which distinguished its facts from that of *Children's Hospital*. There, the Ohio appeals court held that even though the parties in the former action and the current action were not the same, the Ohio Savings Statute applied because the actions were filed in the same court and sought the same relief. That was unlike the facts in *Children's Hospital*, where the plaintiff filed once in federal court and again in state court for different types of relief. However, another Ohio appeals court in *Miller v. All Am. Homes of Ohio, L.L.C.*, 2013 WL 1190834 (Ohio Ct. App. Mar. 22, 2013), held that *Cox* was distinguishable because *Cox* was brought against the parole commission and thus could not have been brought against anyone else, including individual members of the commission, in the state's trial court.

Nonetheless, Rutherlan correctly argues that the ultimate legal consideration is whether a party to a re-filed action was put on notice of the claims against them in the original action. *See Kinney v. Ohio Dept. of Admin. Servs.*, 507 N.E.2d 402, 405 (Ohio Ct. App. 1986). However, as this court concluded in *Griffin v. City of Columbus*, 10 F. App'x 271, 273 (6th Cir. 2001), when the re-filed action includes claims against people who were not properly served in the original action or who were not named in the original action, the Ohio Savings Statute cannot apply. *Id*. This is different from the *Kinney* case, where the parties in the re-filed action had all been parties to the original action. In *Kinney*, the court explicitly pointed out that in this respect, it was different from *Children's Hospital*, 433 N.E. 2d at 190, in which the new action involved different parties. *Kinney*, 507 N.E. 2d at 405. In Rutherlan's case, none of the individual defendants subject to this summary judgment motion were named in the original action. Thus, they had no notice that there were any claims against them until Rutherlan's refiled action in 2014. Consequently, the district court did not err in granting Defendants' summary judgment motion on this issue.

### b. Breach of Contract Claim

"A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E. 2d 1075, 1085 (Ohio 1993) (citation omitted). "An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." *Id.* "Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the

corporate entity." *Id.* "Courts will permit individual shareholder liability only if the shareholder is indistinguishable from or the 'alter ego' of the corporation itself." *Id.* (citation omitted).

### i. **Alter Ego Theory**

Rutherlan argues that the district court erred in granting summary judgment to Defendants on its breach of contract claim. The district court found that Rutherlan "failed to supply enough evidence to submit to a factfinder that any of the natural persons or Zettler Hardware [were] liable for Substruct's conduct." The district court found that Rutherlan did not request certain discovery, such as Substruct's corporate documents, until the discovery deadline. The district court concluded that it could not analyze the claim under *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005), because of the undeveloped factual record. *Keeton* establishes that:

> [i]n deciding whether the company is an alter ego of the individual, Ohio courts consider such factors as:
>
> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Keeton,* 417 F.3d at 605.

However, Rutherlan argues that the record, including deposition testimony and an expert opinion, establishes at least four of the seven *Keeton* factors for determining whether the individual Defendants were alter egos of the corporation.[1] *Id.* We address each of the factors in Rutherlan's argument in the order presented.

---

[1] The *Keeton* factors are not exclusive or exhaustive. *Id.*

### 1. *Failure to observe corporate formalities*

Rutherlan argues that Stratton testified that Substruct held regular management meetings, but no defendant was able to produce documentation of said meetings. Rutherlan asserts that an inability to produce documentation of management meetings creates a rebuttable presumption of a failure to observe corporate formalities. Rutherlan argues that Defendants failed to rebut that presumption, and thus we must conclude that they failed to observe corporate formalities. It must be noted, however, that Rutherlan failed to make this argument in response to Defendants' summary judgment motion. Typically, "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (citations omitted). Nonetheless, Rutherlan provides inapposite authority for its argument.

Rutherlan first points us to *United States v. Parenteau*, 647 F. App'x 593, 596 (6th Cir. 2016), a distinguishable case that held that a company's assets were subject to forfeiture because it produced no evidence that it observed corporate formalities. That is, the company produced no evidence whatsoever, either direct or circumstantial, that it had complied with corporate formalities. The individual defendant in that case did not even dispute that he completely dominated the company. *Id.* But most importantly, this court did not hold that the company did not follow corporate formalities because there were no meeting minutes in the record. Rutherlan also points us to *United States v. Walton*, 909 F.2d 915, 926 (6th Cir. 1990), yet nowhere in that tax fraud case did we hold that a lack of meeting minutes creates a rebuttable presumption that corporate formalities were not observed. We have found no authority for this proposition, and we decline to make such a holding in this case. Further, Stratton's testimony provides some evidence of observing corporate formalities, and Rutherlan has not pointed to any evidence to

contradict his testimony. Thus, we do not agree that Rutherlan has proven that Substruct failed to observe corporate formalities.

### 2. *Insolvency of the debtor corporation at the time the debt is incurred*

Rutherlan argues that Stratton admitted in his deposition that Substruct "had no money" and that they were funded by a gift from Nicholas in 2006, which establishes that Rutherlan was insolvent at the time the debt was incurred. This argument is unconvincing. Stratton testified that the business was "off and going" as soon as they received their first sale. The first sale and Nicholas' gift helped Defendants build Substruct. Rutherlan does not argue that Substruct was insolvent at the time of the contract in 2008. Nor could it, because each tax return in the record establishes that Substruct was never insolvent between 2006-2010. Thus, Rutherlan's argument fails.

### 3. *Absence of corporate records*

Rutherlan argues that Defendants were unable to produce any corporate records, including "meeting minutes, corporate resolutions, director/member meeting agenda, etc." However, Rutherlan fails to acknowledge that it did not request these documents on time. A party is "plainly not entitled to discovery of documents it did not request in pretrial discovery." *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976). The district court was correct in its conclusion that Rutherlan failed to develop the factual record necessary to analyze the *Keeton* factors to its own detriment. Like the district court, we are unable to analyze this factor.

### 4. *Grossly inadequate capitalization*

Rutherlan argues for a "subjective determination" that there was grossly inadequate capitalization of the company based on Stratton and Nicholas' testimonies. Rutherlan argues that

the testimony establishes that "Substruct was not playing with its own money." In *Keeton*, the Keeton Corporation operated on cash flow. That is, it "only incurred liabilities when it bought steel, and it only bought steel when a customer wanted it." *Keeton*, 417 F.3d at 606. This court held that "the company should not necessarily have been unable to pay its debts just because its capitalization was minimal." *Id*. Thus, similar to this case, the fact that Substruct received a gift in its beginning stages and used the gift to do business, does not lead to the conclusion that Defendants were the alter ego of the company. We thus conclude that the district court did not err in its analysis of Rutherlan's breach of contract claim on summary judgment.

### ii. Expert Opinion to Prove Breach of Contract

Rutherlan further asserts that the district court committed reversible error when it declined to consider its expert witness's opinion concerning Substruct's software program. Rutherlan argues that the expert opinion established that the Defendants were alter egos of Substruct and were therefore liable for Substruct's conduct. The district court acknowledged that it did not consider the opinion in its analysis, but found that the expert witness was not disclosed until eight months after the deadline for submission of expert reports.

However, the argument is of no moment, as the expert's opinion does not speak at all to the issue of whether Defendants were the alter ego of Substruct. Rather, the expert opinion concerned the quality of Substruct's productPresumably, Rutherlan desired to show that Substruct breached its contract by providing Rutherlan with a poor quality product. However, regardless of the product's quality, Rutherlan can only seek damages from the individual Defendants if it can prove that the individuals acted as the alter ego of the company. *Belvedere*, 617 N.E. 2d at 1085.

That issue is separate and apart from whether the individuals provided a bad product. Until Rutherlan could pierce the corporate veil, it had no viable claim against the individual Defendants. Thus, the expert opinion of the product's quality was irrelevant to the district court's consideration on summary judgment.

### c. Breach of Warranties[2] and Unjust Enrichment

Rutherlan argues that the district court erred in granting summary judgment in favor of Defendants on its unjust enrichment claim. Under Ohio law, "[a] claim for unjust enrichment may be pled . . . when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." *Cheers Sports Bar & Grill v. DIRECTV, Inc.*, 563 F. Supp. 2d 812, 819 (N.D. Ohio 2004) (citing *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004)). The district court found that the evidence was insufficient to find that Defendants were engaged in a fraudulent scheme, despite Rutherlan's assertion.

Viewing the facts in the light most favorable to Rutherlan, like the district court, we find no evidence in the record that supports an assertion of fraud, bad faith, or illegality. While it is true that ordinarily factual disputes should be decided by a jury rather than dismissed on summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), that presumes that there is some factual evidence for a jury to consider in the first place. Rutherlan pointed to no factual evidence to prove fraud, bad faith, or illegality in its opposition to summary judgment and, likewise, fails to point to any such factual evidence on appeal.

---

[2] In the header of its argument, Rutherlan states that the district court erred in granting summary judgment on its Breach of Warranty claim, yet does not discuss its Breach of Warranty claim at all. Thus, Rutherlan's breach of warranty claim is deemed waived on appeal. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

## III.    CONCLUSION

For the foregoing reasons, the district court's decision on summary judgment is **AFFIRMED**.